with similar issues, A.G. v. Northbrook Industries, Mr. Weeks. May it please the Court, my name is Rory Weeks, and I represent A.G. and G.W. to women who, as children, were sold for sex to many men for many days at the United Inn & Suites in Decatur, which is about 10 miles from right where we stand. Judge Breyer, I heard you say that you're not convinced that renting hotel rooms to traffickers is sufficient to meet the participation element. Just enough. The mere rental of a room, standing alone, I don't think is enough. And I think maybe Red Roof settled that. That does not mean, Mr. Weeks, that I don't think you might have enough to go to a jury. I think we do, but I would like to take a couple minutes and maybe suggest some reasons why I think it might be enough. I would suggest that you try to win the appeal.  So, if we thought that just renting rooms wasn't an act that could be criminalized under the statute, I think one of the ways to start thinking about whether there's participant liability is this. Well, first, do you believe that the district court misinterpreted the law or misapplied the facts to the law? Both, Your Honor. But I'll take just misapplied the facts and we win. But I think the district court also misapplied the law. I think that when you're talking about TVPRA participant or beneficiary claims, what we're looking at is, did the hotel do something that they knew they shouldn't have done or that they shouldn't have done? Or another way of thinking about this is, if they did what they did with actual knowledge, would it have been a crime? It is a crime to harbor somebody who's a minor who is going to have sex. That's a crime. Hotels, by their nature, basically harbor people. So if a hotel knows that there's a child in there who's going to be caused to have sex, whether she has it or not is not even required. If they just know that she's going to be caused, they're criminals. If they knew or should have known, they can be held civilly liable. That's what the beneficiary part does. It extends that liability. We already have coverage in the first part of 1595A for perpetrators. Perpetrators include people who knowingly benefit from, say, aiding and abetting trafficking. Under 1591A2, that's a crime, or 1589B for labor trafficking. That's already a crime to knowingly benefit from that activity. The beneficiary liability in the civil provision provides additional coverage for people who make money off of sex trafficking or labor trafficking or human trafficking or shipping people who are slaves because part of Chapter 77 includes that. That's part of what the beneficiary liability picks up. And here, I don't think there's any doubt that if the hotel had absolutely known what was going on in the rooms, that they would have been criminal. But we don't have to prove that, of course, to win something under the beneficiary claim. We only have to prove that they should have known. And I believe that there's much of evidence here to suggest that they should have known what was going on and that in this way that they participated. And so I want to talk about participation for a second. If we think that the hotel has to do something involved with the traffickers to be a participant, that essentially the entity has to participate with the traffickers. They have to provide some kind of support. They have to provide some kind of support. Lend some kind of support. Okay. So what have you got here? If that's what we're thinking has to happen, then I think we have to think about what they're doing in light of what they know. And I think this is because innocent actions can actually be not so innocent when you know a lot of things about them. Mr. Ramachandrappa was talking about that essentially in his case. When you know all these background facts about a place and then you do certain actions, we have reason to think that. So here's some background facts about the United Inn. It was a well-known commercial hotspot for years in DeKalb County, according to device detectives. From 2012 to 2016, there was at least seven incidents at the hotel involving commercial sex where the police responded. In June of 2017, the month in which A.G. and G.W. were started to be sold for sex there, there was two incidents. A man beat a woman, and the police responded because there was a dispute about money owed for sex. And then there was another dispute, a fight between a prostitute and a pimp, where the police responded to at the hotel. Hotel knows that it's a problem. So there's some background evidence of friendliness to sex trafficking. Yes, sir. Is your best evidence of the kind of support I was talking about, the letting the girls back in the room? That is by far the best fact in the case, is that when they were locked out of the room, when they showed up in the front, first of all, the hotel did not check their ID but somehow knew they didn't actually have to be in the room. They spoke with the traffickers, and then after speaking with the traffickers, let them back into the room. And that is certainly our best fact to show participation in that. They're also selling them condoms. They're selling them foodstuffs. They're seeing them walk around the parking lot and talk to men. You know, one of the things not to miss here is that there's 36 cameras on the property. You're saying there's evidence that the hotel sold the girls condoms? Yes, sir. There are. Where do I find that? Let me grab you a site on my response for the exact site. But they did sell them condoms in the middle of the night. During the time that they're there, two groups of five men, or four to five men, have sex with AG and GW. After they have sex with them, there is a commotion and a response and a disturbance in the common area right outside their door. Relevant to this is the fact that their hotel room, room 112, is about 50 feet from the office. That's on the same side, on the same floor. There's cameras on the outside. These are all things that they could have known if they had wanted to know about it. And it is in that context that they sell them condoms. It is in that context that they walk them back to their room when they're in in the middle of the night. And while I'm on that, I want to make a small brief aside to say something about the Georgia law claim that we have here. If opening the door and letting you into a hotel room is not at least an implied invitation to spend the night, I don't know what is. And spending the night in a hotel is certainly lawful. And so I wanted to make that quick point about— Is that separate from the status? Because I know we get into invitee versus licensing. Is that related or separate? What I think it does is establish a minimum for that period. You're at least an invitee. Now, when that ended, how far that extended, all those are questions for the jury to decide. But in terms of your status being established at some point— Because the district court here said that there was never any point where they were an invitee. But they went to the front to buy things and that they were being sold. They were allowed to hang out in the parking lot and walk around. They were let back into rooms that they were using and being sold for sex. And so I think that that gives them at least at some point, for some small period of time maybe, it doesn't matter. As long as there's any period where they were invitees, I think that solves that. But to answer your question, Chief Judge Pryor, the absolute best evidence is that they were participating was that. But we have other inferential evidence. So one of our clients testified that her trafficker would show up in the morning to collect the money and then disappear for 15 to 20 minutes. Her inference from that is that he was going to pay the money to rent the room for the next day. And given his friendliness with the staff, it makes sense that he had some knowledge about what was going on there. A jury could certainly find that. And it's in light of the context of how bad the hotel is, how poorly they're doing on executing any of the sort of things they're supposed to do. They don't do any training about trafficking. They don't post any notices, which was required by Georgia law. They're showing themselves to be, come here because this is a place that you can get away with this. In fact, our client testified that GW. There's evidence that the traffickers prefer it as a location. That's correct. And that seems to be evidence that they're doing something either affirmatively or by refraining from doing something. They don't call police. They don't get them involved. They act like they don't know. When things go on outside your room, they just pretend like nothing's happening. If you get locked out and you're not even on the room, we don't check to see your ID and see if you get back in. We'll just go ahead and walk you back down as long as the person who's paying us tells us it's okay. All those things are signs of participating in it. To the switching, talk just a few more seconds about the negligence claim. One of the things that gets brought up in the briefing on appeal has to do with the idea that the injury has to occur at, or sorry, that you have to be an invitee at the time of injury, which was not raised in the district court, not considered by the district court, and it's also not true. And the reason it's not true is factually the entire trafficking period, the entire time that they're there, these girls have been told that they're being monitored. They're being coerced into doing this. They've been tricked to get there. When they go buy food at the front store, when they go buy condoms, when they're at the hotel, these are all things that are part of the trafficking, and if they're experiencing any harms, any of the sort of physical or mental degregations that go associated with being sex trafficked during that time, they are suffering injury. United acts as if the only injuries that they ever suffered were the times when the guys came to the room and paid money to have sex with these children. But that's not the only times that they're injured during this period, because sex trafficking isn't a singular sort of event-specific crime. So I wanted to address that argument. Well, first clarify for me. Did at some point the district court state or suggest that because they were there engaged in unlawful activity, they couldn't be invitees? That's correct. The district court did say that. And that's just an incorrect statement as a matter of law. I'll give you an example I think that helps. Suppose I got a wild hair and went to the Walmart parking lot and decided I was going to do some skateboarding, which is not allowed and they don't permit. But after a minute or two, because it won't take very long for me to be tired, I get tired and decide I want to go get a drink. And so I walk inside the store to go buy a soda. And as I do, I slip and fall. I may have started off on the property as not an invitee. But when I'm walking into the store to buy something, surely I've become an invitee under Georgia law at that point. So they could have come on the property perhaps, assuming when you're brought to a place that isn't your choice, you actually are making a choice. For an unlawful purpose. But just renting a room is a lawful purpose. Correct. Buying goods is a lawful purpose. Anytime we transition to that, you become an invitee. And the question of whether that switch is made or how far it extends is under well-subtle Georgia law question for the jury and should be also a question for the jury in federal court. And I'm going to cede back my last 40 seconds and see you on rebuttal. All right. We'll give you three and a half on rebuttal. Mr. Mobley. May it please the court. My name is Cameron Mobley and I represent the appellee, Northbrook Industries, Inc., who I'll be referring to simply as Northbrook for the purposes of this argument. I'd like to start with something that I know everyone in this room can agree with. Which is that what happened to appellants A.G. and G.W. is absolutely horrific. Sex trafficking has no place in our society. And we as citizens benefit tremendously from the enactment and the enforcement of the TVPRA. But I must urge this court not to allow the disturbing facts of this case to lead to an unreasonable interpretation of the TVPRA. And make no mistake, that's exactly what the appellants are asking this court to do here today. Because to adopt their analysis and adopt their interpretation of the TVPRA would require this court to stray from both the Red Roof and K.H. opinions. Ignore or contort the text of the statute. And ultimately create an affirmative duty on all businesses to either prevent or intervene in sex trafficking. Yeah, you know, it does seem to me, though, that there's some background evidence here about this particular property's friendliness and awareness of sex trafficking. Not posting the notice, all the incidents, all the police visits, etc. And evidence of particularly friendliness and awareness of the particular traffickers here who would spend 15 to 20 minutes talking with the hotel staff each day. And then there's this moment where the girls want back in the room and the hotel staff contacts the traffickers to let them back in. That looks to me like a really bad fact for you. Well, I won't say it's a good fact, but what I'll tell you is this. All of the facts that you're pointing to and all that my opposing counsel pointed to only demonstrate an aspect of negligence. And what they're trying to do here is have the constructive knowledge aspect of this statute consume the entire statute. But what the district court decided this case on was participation. I mean, this is a fact that concerns me as to participation. I understood, Your Honor. With regard to spending the time paying for the rooms, for example, I think the district court was well within reason to exclude that fact based on evidence rules. That's rife speculation. If we look back at the testimony from the appellant on that issue, obviously she was not there. She really didn't know where the trafficker was. So to the extent that that's even admissible evidence that should have been considered on summary judgment is arguably it should not have been considered. But even if it is considered, Your Honor. Didn't she testify that she knew he hadn't left the property, at least not in his car? I'm sorry, Your Honor. I didn't hear you. Wasn't there evidence that she at least testified that he didn't leave the property in his car anyway? Yes, Your Honor. But again, what the appellants are asking the district court and now this court to draw, the inference they're asking them to draw from that fact, is that the trafficker had some sort of friendly relationship with the operator of the hotel. But this is an absence of evidence. It's not evidence of any fact because she's not aware of what's going on during this time. So can we draw the inference that the trafficker didn't leave the property because his car is still there? Sure. But to take the next step and say that there's some kind of relationship beyond that of what a relationship that would exist between a hotel operator and any guest is going far beyond what the evidence actually shows. And because the court spent some time talking about the letting the girls back into the room, I want to address that point as well. Your Honor, because the hotel operator contacted the traffickers who were the ones in contractual privity with the hotel, the unavoidable implication of that is that if they had told them that those young ladies were not permitted to enter that room, they would not have given them access to that room. You see, this is nothing more than them providing customer service to someone that has rented a room from this property. And now I understand that the facts of this case make that seem more disturbing. These 17-year-olds who've been buying condoms from the hotel staff are wanting back in and they call the traffickers. That sounds like the sort of thing that they should have known would involve sex trafficking. Your Honor, again, I think these facts may go to constructive knowledge, but they don't go to participation, which is the element that the court decided this case on. I mean, that's over and beyond the support, isn't it? No, Your Honor, because when we look at the services that hotels offer to the public generally, we have to expect that, of course, they're going to provide access to the room. There's other aspects of customer service that are going to be involved in that. Letting them back in when they've been locked out certainly fall within the scope of that. When we look at not only the text of the statute, but the— Look, if you've got the person you know who's been renting the room, the person to whom you've given a key, the person who's financially responsible, I understand how a hotel's interaction with that person in and of itself wouldn't mean participation. But when you have 17-year-old girls who've been hanging out, wearing provocative clothing, buying condoms at the hotel, standing in the parking lot late at night, and the individuals who've been—who've got the keys and have been paying for the room who you've been talking with each day, these men you know aren't there, you contact them by phone to let these young girls in. Now, it looks like you've gone a step further. Well, Your Honor, I would like to turn back to the text of the statute, which, you know, participation in a venture, right? That's what this case is all about. The way that this circuit has defined that—well, I won't go into—we know how this court defined it. But what I want to point to is the sources that they drew from to reach that definition. So this court relied on Black's Law Dictionary and Oxford—the Oxford English Dictionary to describe what a venture is. Both of those definitions include commercial speculation, okay? Commercial speculation—if we're talking about a joint venture between two parties, there has to be some aspect of speculation as to what may be derived from this venture. And didn't DeKalb County, with all of its inspections and investigations, answer that question to some extent? I mean, you started out your presentation saying that a ruling for the other side suggests that your client has an affirmative duty to stop. But that may not be what the statute requires. But for sure, once they are on notice that there is criminal activity happening, potentially involving minors, and then you open the door for young girls to get into the room, how is that not an extra step? Your Honor, again, I would turn back to the fact that this is still what has been—what the evidence demonstrated in this case never showed that Northbrook took any steps beyond what would be asked of a hotel in any typical hotel guest circumstance. It also didn't take steps—I mean, again, if I understand the record—to address the complaints that were brought to its attention. For example, posting signs or other information to tell people what does sex trafficking, human trafficking look like? Of course, Your Honor, and I think that that is certainly relevant to the state law negligence claim. But considering the fact that we are continuing on this path, I want to take a step back and let me preface this by saying I understand that the court is not in a position to supplant the legislature's intent. So I'm not asking that the court consider these policy implications to step in and take Congress's role. But what I do think is if we play out what appellants are suggesting here and see what the end of that looks like, it provides some context as to why this statute was written the way it is. Because I'll give you a perfect example. I can look at the allegations of the complaint, but the appellant's counsel in the CB case just mentioned that what should have put the operator on notice as to sex trafficking was the presence of a young black girl and a 48-year-old man. So if we look at that, if we're going to accept that that is the type of evidence that should provide constructive knowledge to a hotel, and we play that out, this is going to put hotels in a position where they have to profile and discriminate against people based on how they look in order to avoid liability under this statute. It wasn't just that you had a young black girl with an older white man. It was also the way in which they were engaging. But that's not your case. Your case is here where you have police investigations informing your client that there is illegal activity happening. And so perhaps they didn't have the affirmative duty again, but now they know. And they're not taking any steps to at least abide by the advice. And the evidence suggests they're taking affirmative steps in the participation. Well, I would push back on taking affirmative steps in participation because what the statute does not say is that defendants are under a duty to exercise reasonable care in ensuring that trafficking doesn't happen at the property. It says that you cannot participate in that trafficking. And I think what the district court relied on in demonstrating— You can't be profiting by participating in what you should have known. It's not new or should have known with trafficking, right? Correct, Your Honor. But here what we have, what Northbrook was profiting from was renting rooms to individuals. At some point, the room rentals, the making the money from the room rentals, when you know what's going on and you're assisting it and customizing it, enabling it, at some point it does become participation, doesn't it? Especially under the criminal statute, Your Honor. At some point— Let's talk about this then, this aspect of it, the civil aspect of it. You agree, don't you, that at some point a hotel operator can be participating in the venture, right? Absolutely, Your Honor. They can't just say all we do is rent rooms. No, and that's not what I'm attempting to convey to the court either. I think the allegations of this complaint of a police lookout aiding the traffickers is the quintessential example of how a hotel operator might participate in a trafficking venture without having crossed the line into perpetrator liability for the purpose of the— I'll just come back to the fact that really troubles me. The one that goes the next step is letting those girls get back into that room after calling the traffickers. Well, Your Honor, I understand that the facts of this case are disturbing in many ways, but at the end of the day, we're bound by the text, and what the text says is participation in a venture. This is not participation in a venture by any reasonable understanding of what a venture is. What this is is a transaction. And when we look at the way that Black's Law defines a transaction— You let the trafficked victims back into the room. You are enabling what you should know is prostitution or is sex trafficking. That's my concern. And, you know, profiting from it. Again, Your Honor, what I would turn back to is that this is precisely the type of service that is being offered to the public generally. The fact that criminals are taking advantage of this legitimate business is not what exposes—that's not what the text— Well, that's the question, too. Is it a legitimate business if it's engaged in this kind of activity? Well, Your Honor, I understand that would be the question. Were there a perpetrator liability claim against the hotel? But there's not. There's a beneficiary claim. And in order to be held liable as a beneficiary, you have to participate in that trafficking. Why is this—but this is a summary—we're here on summary judgment, right? Correct, Your Honor. Why at least are there not material questions, even given this colloquy, for a jury? I think to Judge Conway's question, perhaps in the other case, why is this not at least right for a jury's consideration? Well, Your Honor, all of the facts that we've really been harping on here really would only be relevant to the constructive knowledge aspect because in order to participate, there has to be some act beyond—for example, I'll take us back to the Gigi v. Salesforce case, right? Although they got there a different way, they ultimately kind of ruled the same way that this court ruled in Red Roof, which is that there has to be some provision of some good or service beyond what is being offered as the, quote, off-the-shelf offering. When you transpose that reasoning to our case, the off-the-shelf offerings of a hotel necessarily include, you know, access to the guest rooms, include access to the common areas, and include customer service. You know, I would even say the discretion—exercising the discretion of where to place— Okay. Sorry. I know you're running out of time. So does some of that speak to the invitee versus licensee? Are you now conceding they were invitees? No, Your Honor. No. What I will tell you is that—I know I'm running out of time. Can I just take a brief moment to— You're going to respond to that question, and then we're going to be done. Okay. No, I'm not conceding that they were invitees, Your Honor. You see, under the law, they're required to be on the premises for a lawful purpose. Now, I understand Appellant's argument saying that, you know, they transformed into invitees once they, you know, made these purchases in the lobby and whatnot. But the fact remains that the injury that's been alleged to have approximately caused their damages is the sex trafficking itself. So to say that they're constantly being injured from the point in which they're recruited into sex trafficking until— I mean, I would imagine forever, you know, that's not the allegation of the injury that occurred for the purposes of premises liability. That occurred inside the room, and they were never invitees to the room. Okay. I think we understand your point about invitees. Thank you, Mr. Mobley. Thank you, Your Honor. Mr. Waits. The Seventh Amendment was added to the Constitution to fix a problem that many believed existed and that was almost derailed the impassment of the Constitution in the first place, and that is the role of civil juries in trials. That's why we have them. And much of what we're talking about here, whether this qualifies as participation, what you could know, what you didn't know, all these are questions that juries have traditionally, historically, and should continue to sort out in these cases. The statute that we're talking about today, the TVPRA civil beneficiary portion, is extremely broad. As Chief Judge Pryor mentioned earlier, it talks about whoever knowingly benefits from participation in a venture, and that venture only has to do an act, as we've said, that is in violation. And I would suggest that that act itself isn't necessarily required to be a violation. An act in violation and a violation may not be the same thing under the statute. And lastly, that the person who's being brought up has to know or should have known about what the venture did. Here, the hotel absolutely knew or should have known that it was renting rooms to traffickers out of which trafficking was happening. A jury could certainly conclude that. And if they did that, they could absolutely hold them civilly liable and award damages and attorney's fees. I'm having a hard time understanding how an act in violation is something different from a violation. So there's two different phrases in the statute. One time in the perpetrator claims it refers to a violation of this chapter, and the next time it refers to an act in violation of this chapter. And the changer is— So you've got an individual who's a victim of a violation. Correct. But in terms of the participant liability, should have known has engaged in an act in violation. If act in violation requires there to be a criminal action itself by the venture, then we run the same risk that they identified in Red Roof of reading should have known out of the statute, right? It has to be possible for what the defendant did to only do that with—to do that with not actual knowledge, not reckless disregard, but simply just should have known knowledge, constructive knowledge, and still be held civilly liable. Yeah, but still be should have known knowledge of a violation. If we read it that way, then—and the violation is the trafficking itself that can occur, whether or not they were involved in it itself. I will—I'm fine with that reasoning. At the end of the day, Congress decided that in 2008 it wanted to make people who profit off of sex trafficking and labor trafficking, other forms of human suffering— Knowingly. Potentially liable, who knowingly benefit from that. And it passed the statute that did that, and we believe the facts here allow at least a jury to decide whether United is responsible for that. Okay, counsel. We—I think we understand your case. We're going to move on to the third one. All right. Val Valerie? Hey, Valerie. So tell me about it, and that's 20 minutes past. He was late last week. So how late was he? A few minutes. Okay. Do you want me to sit here? Okay. Okay.